UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

No. 3:08-CR-93-2-BR

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| DAVID A. HAGEN | ) | |

This matter is before the court on the government's motion *in limine* to introduce defendant's admission of guilt in a plea agreement and defendant's statements during debriefing. In response, defendant Hagen filed an objection and motion to suppress. The government filed a response in opposition. Thus, the matter is ripe for disposition.

BACKGROUND

On 29 January 2007, in this district, defendant was charged by way of criminal complaint with wire fraud, conspiracy, and money laundering, among other things, Case No. 3:07-MJ-15. On 27 September 2007, defendant was arrested in the Eastern District of New York and was subsequently removed to this district for prosecution. On 22 October 2007, defendant, his counsel, and Assistant United States Attorney Matthew Martens signed a plea agreement, with the following pertinent provisions.

> 1. The defendant agrees to enter a voluntary plea of guilty to Counts One and Two, as set forth in the Bill of Information, and admits to being in fact guilty as charged in those counts. A factual statement summarizing the defendant's conduct is attached hereto as Exhibit 1.
> . . . .
> 8. . . . . Notwithstanding the above, the defendant understands and agrees that if he should fail to fulfill completely each and every one of his obligations under this Plea Agreement, then the Government will be free from its obligations under the plea agreement and the defendant shall be fully subject to criminal prosecution as if this Plea Agreement had never existed. In any such

prosecution, the prosecuting authorities . . . shall be free to use against him, without limitation, any and all information, in whatever form, that he has provided pursuant to his plea agreements or otherwise. . . .

. . . .

14. With the Court's permission, the factual basis, as required by Fed. R. Crim. P. 11(b)(3), will be deferred until the time of sentencing. The defendant stipulates that there is a factual basis for the plea of guilty . . . .

. . . .

17. The defendant acknowledges that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 are rules which ordinarily limit the admissibility of statement made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights which arise under these Rules. As a result of this waiver, he understands and agrees that any statements which are made in the course of his guilty plea or in connection with his cooperation pursuant to this plea agreement will be admissible against him for any purpose in any criminal or civil proceeding if his guilty plea is subsequently withdrawn.

. . . .

24. . . .

> a. The defendant will provide truthful information about the subject charges and about any other criminal activity within the defendant's knowledge to any government agent or agency that the United States designates.
>
> . . . .
>
> h. Nothing that the defendant discloses pursuant to this Plea Agreement will be used against him in any other criminal proceeding, subject to the following exceptions:
>
> > . . . .
> >
> > 3.) if the defendant withdraws his plea of guilty, the United States may use any and all disclosures in any subsequent trials or criminal proceedings;
> >
> > 4.) if the defendant violates any of the terms of this Plea Agreement . . . then the United States may use any and all disclosures in any subsequent trials or criminal proceedings . . . .

(Gov't Mot. Limine, Ex. B.) The factual statement, referenced as Exhibit 1 to the plea agreement, was never made a part of the agreement. The day following his signing of the plea agreement, 23 October 2007, defendant was debriefed, during which he purportedly made a number of admissions to government agents. On 24 October 2007, a bill of information was filed charging defendant with securities fraud and conspiracy to commit money laundering, Case No. 3:07-CR-239.

On or around 29 November 2007, defendant's counsel withdrew. Defendant subsequently obtained new counsel, who represents him currently and who informed the government that defendant would not enter a guilty plea to the bill of information. On 23 April 2008, the grand jury returned an indictment against defendant which has recently been superceded. Defendant is charged with conspiracy to commit (1) securities fraud, (2) mail and wire fraud, and (3) money laundering.

## ANALYSIS

As noted at the outset, the government seeks to admit defendant's admission of guilt made in the plea agreement and defendant's statements during debriefing on 23 October 2007.[1] (Gov't Mot. at 1, 5.) By its own admission, the government does *not* seek to admit against defendant the FBI document memorializing the statements defendant made during debriefing; rather, the government desires to introduce the FBI agent's oral recitation of those statements. (Gov't Br. Opp'n at 14.) Defendant's primary argument in opposition is he withdrew the plea agreement prior to it being finalized. (Def. Obj. at 2-3.) Thus, resolution of the admissibility of defendant's admission of guilt and statements centers, at least initially, on whether the government and defendant reached a binding agreement.

The court's analysis begins with general contract principles, which in large part govern the

---

[1] The court does not understand the government's motion to encompass admission of the entire plea agreement and therefore this issue is not addressed.

3

determination of the formation and interpretation of plea agreements. See United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986). Essential to contract formation is a "meeting of the minds." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979); Parker v. Glosson, 641 S.E.2d 735, 737 (N.C. Ct. App. 2007).[2] In other words, the parties must mutually assent to the material terms of the contract. Id. "There is no meeting of the minds, and therefore, no contract, when 'in the contemplation of both parties . . . something remains to be done to establish contract relations.'" Parker, 641 S.E.2d at 737 (citation omitted) (alteration in original).

> But the courts have recognized that th[e]se rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights- to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government."
>     That the resulting interpretive doctrine is an amalgam of constitutional, supervisory, and private law concerns does not mean, however, that it is without form. Some ordering principles and guidelines have clearly emerged. . . .
> . . . . Neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind. Such an approach is conformable not only to the policies reflected in private contract law from which it is directly borrowed, but also to constitutional concerns of fundamental fairness in "bargaining" for guilty pleas, and to the wider concerns expressed in the exercise of supervisory jurisdiction over the administration of federal criminal justice.

---

[2] While arguably the application of state contract law should be restricted to cases where the interpretation of a state plea agreement is an issue, see Buckley v. Terhune, 441 F.3d 688, 694-95 (9th Cir. 2006) ("[T]he construction and interpretation of state court plea agreements 'and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.'" (quoting Ricketts v. Adamson, 483 U.S. 1, 6 n. 3, (1987)), the court cites to state law here, where there is a federal plea agreement, because defendant himself relies on it, (Def. Obj. at 4, 6-7).

4

Harvey, 791 F.2d at 300 (citations omitted).

With these principles in mind, the court concludes the plea agreement constitutes a binding contract between the government and defendant. Defendant, with the advice of counsel, executed the agreement. By the agreement's plain language, there was nothing left for the parties to negotiate nor was there a condition precedent for the contract to take effect. That the factual statement summarizing defendant's conduct was not attached as an exhibit at the time the parties executed the agreement is not fatal to the agreement's validity. The factual statement was *defendant's* statement; it was not a statement to which the government need stipulate. It was not material to the agreement, as in the body of the agreement, defendant admitted to being in fact guilty as charged and stipulated to the existence of a factual basis for the plea of guilty. As the government explains, had the statement been attached and had defendant entered a guilty plea, the statement could have simply been used by the court to assist it in finding a factual basis for the plea, should the court not wish to defer that finding until sentencing, (see Gov't Mot. Limine, Ex. B ¶ 14 ("With the Court's permission, the factual basis, as required by Fed. R. Crim. P. 11(b)(3), will be deferred until the time of sentencing.")). The parties' course of action upon the plea agreement's execution further evidences that the parties intended to be bound by the agreement. Pursuant to the terms of the agreement, defendant began cooperating with the government– hence the government's debriefing defendant. At that time, defendant was not still negotiating the terms of his plea but rather he was acting in compliance with the contract he had already formed. Subsequently, defendant simply had a change of heart, and by failing to enter a guilty plea, defendant thereby breached the plea agreement.

Having found a binding agreement and breach thereof, there is no doubt that the government

5

may use defendant's admission of guilt and debriefing statements at trial. See United States v. Scruggs, 356 F.3d 539, 546 (4th Cir.) (because of the defendant's breach of the plea agreement, "the Government retained its 'remedy for breach' under the agreement: use of the statements [the defendant] had given pursuant to the agreement."), cert. denied, 541 U.S. 1079 (2004); United States v. Wright, 2 F.3d 66, 70 (4th Cir. 1993) (upholding district court's denial of motion to suppress statements the defendant made during interviews undertaken in cooperation with the government where "[t]he terms of the plea agreement [] clearly contemplated use of [the defendant's] statements in the event of his breach [and t]hus the breach 'justly exposed him to prosecutorial use' of any information provided in partial compliance with the agreement." (citations omitted)); United States v. El-Amin, 268 F. Supp. 2d 639, 642 (E.D. Va. 2003) (statement of facts signed by the defendant during plea negotiations were admissible pursuant to waiver in plea agreement and upon the defendant materially breaching the plea agreement by declining to follow through with plea); Gov't Mot. Limine, Ex. B ¶¶ 8, 17, 24(h). The issue is, however, the extent to which the government may use that evidence at trial.

Relying on United States v. Mezzanatto, 513 U.S. 196 (1995), and cases interpreting that decision, defendant argues that the government may only use his statements for purposes of impeachment. In Mezzanatto, the Court held that Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6) (amended now as 11(f)), which preclude admission against a defendant of statements he makes in the course of plea discussions with the prosecutor (which do not result in a guilty plea), may be waived by voluntary agreement of the parties. 513 U.S. at 210. Defendant points out that some courts have limited Mezzanatto's application to impeachment use. (Def. Obj. at 7-8.) But see United States v. Burch, 156 F.3d 1315, 1321-22 (D.C. Cir. 1998), cert. denied, 526 U.S. 1011

(1999); El-Amin, 269 F. Supp. 2d at 642. The court need not decide whether Mezzanatto applies here. The plea agreement was formed on 22 October 2007 upon the parties' execution of the agreement. Defendant's admission of guilt came to fruition at that time and the debriefing statements were made the following day. Plea negotiations were no longer taking place, and thus, Rules 410 and 11(f) (and any waiver thereof) do not apply. See United States v. Watkins, 85 F.3d 498, 500 (10th Cir.) (holding statements made by a defendant pursuant to a plea agreement but after the agreement's finalization are not entitled to protection from admission in evidence under former Fed. R. Crim. P. 11(e)(6)) (collecting cases), cert. denied, 519 U.S. 908 (1996).

In sum, the parties reached a binding plea agreement. Defendant subsequently cooperated in furtherance of that agreement. Defendant refused to enter a plea of guilty. As a result, he breached the plea agreement, and in such a case, under the terms of the agreement, the government is entitled to use in its case-in-chief defendant's admission of guilt therein and his debriefing statements.

The government's motion is ALLOWED. Defendant's objection is OVERRULED and motion to suppress is DENIED.

This 19 December 2008.

　　　　　　　　　　　　　　　　　　　　W. Earl Britt
　　　　　　　　　　　　　　　　　　　　Senior U.S. District Judge