UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:08-CR-00093-FDW-DCK

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| DAVID A. HAGEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release (Doc. No. 200). This matter has been fully briefed, (Doc. Nos. 200-1, 207, 211), and is ripe for ruling. For the reasons set forth below, Defendant's Motion is **GRANTED IN PART** and his sentence is reduced to 300 months.

## I. BACKGROUND

In May 2009, a jury convicted David A. Hagen of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371; conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349; and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956. (Doc. No. 125.) Defendant participated in "a so-called 'pump-and-dump' securities fraud scheme, in which he and his co-conspirators acquired control of a company known as GTX Global, made successful efforts to artificially increase its stock price, and then sold the stock at a higher price, bringing in proceeds of approximately $27 million." United States v. Hagen, 468 F. App'x 373, 375 (4th Cir. 2012). Another judge in this District sentenced Defendant to consecutive sentences on each count of for an aggregate sentence of 540 months imprisonment. (Doc. No 147.)

The United States Probation Office prepared a presentence report. Probation calculated Defendant's guidelines range as life based on a total offense level of forty-three and a criminal

1

history category of III. (Doc No. 139, p. 15.) Defendant's base offense level was thirty-seven, which included a twenty-two level adjustment for a loss of more than $20 million, (Doc. No. 139, p. 10), and his total offense level included two-level increases for money-laundering conspiracy, the use of sophisticated means, and obstruction of justice. (Doc. No. 139, p. 10.) The Sentencing Guidelines, therefore, advised statutory maximum sentences of 60 months, 240 months, and 240 months totaling 540 months in prison. (Doc. No. 139, pp. 10, 12, 15.) Defendant was sentenced to 540 months. (Doc. No. 147.)

Defendant appealed his conviction and sentence, and the Fourth Circuit affirmed. See Hagen, 468 F. App'x at 391. As the Fourth Circuit explained, "[t]he jury found that the defendants obtained proceeds of $27.6 million, and there was undisputed evidence at trial that once the fraudulent scheme was made public, the value of the shares dropped essentially to zero." Id. at 390. "The record amply supported the district court's conclusion that the fraud perpetrated by Hagen and his co-conspirators caused at least $20 million of the $27.6 million loss suffered by investors." Id. Defendant also filed a motion to vacate under 28 U.S.C. § 2255 contending he received ineffective assistance of counsel, which this Court denied. (Doc. Nos. 189, 190.)

In March 2023, Defendant moved for compassionate release. (Doc. No. 200.) He contends his sentence should be reduced to time served due to his age, vulnerability if re-exposed to COVID-19, and the length of his current sentence. (Id.)

## II. STANDARD OF REVIEW

Defendant's motion seeks a reduction in his sentence in this case pursuant to 18 U.S.C. § 3582(c)(1)(A). A defendant may seek a modification of his sentence from the court under § 3582(c)(1)(A) for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[1] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023), cert. denied, 143 S. Ct. 2596, (2023).

First, the court determines whether the defendant is eligible for a sentence reduction. "A defendant is eligible if the court finds 'extraordinary and compelling reasons warrant such a reduction,'" id. (quoting § 3582(c)(1)(A)), and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In 2023, the United States Sentencing Commission amended its policy statement to apply to defendant-filed motions for compassionate release, as permitted under the First Step Act of 2018, and expanded the list of circumstances sufficient to support such a motion under § 3582(c)(1)(A). See U.S. Sent'g Guidelines Manual § 1B1.13. The amendments became effective on November 1, 2023. Id. They supersede much of the case law developed over the past several years while there was no policy statement applicable to defendant-filed motions. See United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020). However, while drafting the new policy statement, the Sentencing Commission considered case law developed after the enactment of the First Step Act in the absence of a binding policy statement. U.S. Sent'g Guidelines Manual § 1B1.13 amend. 814 (Supp. to App. C 2023) (discussing Amendment 814 in light of the Supreme Court's decision in Concepcion v. United States, 142 S. Ct. 2389 (2022)).

---

[1] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

The policy statement now in effect authorizes a finding of extraordinary and compelling reasons for relief under § 3582(c)(1)(A) where, "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S. Sent'g Guidelines Manual § 1B1.13(b)(2). Defendant filed his Motion before the amendment became effective. However, this Court will evaluate the Motion under the current policy statement. See United States v. Davis, 99 F.4th 647, 654 (4th Cir. 2024) ("[I]f a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.").

"Second, the court considers 'the factors set forth in section 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A)) (citing United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021)). Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others: "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;" the kinds of sentences available and sentencing ranges; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing

4

the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("[I]f a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

The record demonstrates Defendant exhausted his administrative remedies, (Doc. No. 201-1, p. 3), and the Government does not contest he did so. (Doc. No. 207, p. 7, n.1.) Thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release or a sentence reduction in light of the applicable § 3553(a) factors.

### III. ANALYSIS

Section 3582(c)(1)(A) authorizes a district court to reduce a defendant's sentence, after considering the sentencing factors described in 18 U.S.C. § 3553(a), if the court finds (1) extraordinary and compelling reasons warrant a sentence reduction and (2) a sentence reduction is consistent with "applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement applicable to compassionate-release motions is U.S. Sentencing Guidelines § 1B1.13.

Section 1B1.13, as amended, authorizes this Court to grant a defendant's motion for compassionate release if this Court finds extraordinary and compelling reasons warrant a sentence reduction and the defendant is not a danger to the safety of any other person or to the community. U.S. Sent'g Guidelines Manual § 1B1.13(a). Section 1B1.13(b) describes five categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release: (1) medical circumstances of the defendant, (2) the age of the defendant, (3) a defendant's family circumstances, (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury," (5) an unusually long sentence, and (6) other reasons of similar gravity.

Defendant asserts three extraordinary and compelling reasons support a reduction in his sentence to time served under the compassionate release statute. First, he is experiencing a serious deterioration in his physical health related to the aging process. Second, he is particularly susceptible to the threat of the COVID-19 virus. Third, if sentenced today, he would face a significantly shorter sentence. The Government argues this Court should deny Defendant's motion because although Defendant has various health concerns, he is receiving appropriate treatment for these conditions, and they do not rise to the level of a truly exceptional case. (Doc. No. 207, p. 10.) The Government also argues that the need for deterrence to protecting the public and for just punishment weigh in favor of denying Defendant's motion. (Doc. No. 207, p. 13.)

**A. Serious Deterioration in Physical Health Related to the Aging Process**

Defendant argues he meets criteria for extraordinary and compelling reasons under the "Age of the Defendant" subsection of the policy statement. "In May 2023, the Sentencing Commission . . . promulgated amendments to U.S.S.G. § 1B1.13, the section that governs 3582 and discusses the contours of 'extraordinary and compelling' reasons." Davis, 99 F.4th at 654. The relevant policy statement says a defendant may show extraordinary and compelling reasons support release due to age if: "[D]efendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." § 1B1.13(b)(2). Defendant is sixty-nine years of age, and, as of February 2023, he had served fifteen years and four months. (Doc. No. 201-1, pp. 1–2.) Defendant must demonstrate a serious physical or medical condition or deterioration due to age. Defendant highlights several medical conditions he argues amount to "a serious deterioration in physical or mental health because of the aging process." U.S. Sent'g Guidelines Manual § 1B1.13(b)(2).

6

A defendant's deteriorating health and advanced age fit squarely within the provision of the U.S. Sentencing Guideline Manual when he is over sixty-five and struggles with physical health ailments related to the aging process. United States v. Malone, 57 F.4th 167, 175 (4th Cir. 2023). In Malone, the Fourth Circuit determined the defendant would have qualified for a modified sentence under U.S. Sent'g Guidelines Manual § 1B1.13 the first time he filed for compassionate release. Id. at 174. During his first motion for compassionate release, the defendant suffered from deteriorating health including "colon-rectal cancer and a permanent colostomy bag, Type II diabetes, morbid obesity, hypertension and hyperlipidemia (both of which required medications), cystic kidney and liver disease." Id. at 175. The Fourth Circuit found these six ailments, when taken together, qualified as "countless physical health ailments related to the aging process." Id.

Here, Defendant points to his "uncontrolled hypertension, disorders of the circulatory system, periapical abscess with and without sinus involvement, severe degenerative joint disorder in the lumbar spine, probable prostate cancer, and abnormal blood chemistry." (Doc. No. 200-1, p. 23.) Defendant makes no effort to specifically establish how these conditions are causing serious deterioration in his health, merely making the conclusory statement that they meet the criteria established under U.S. Sent'g Guidelines Manual § 1B1.13(b)(2). Nonetheless, this contention is supported by the medical records submitted by the Government, (Doc. No. 208), and substantial evidence supports deteriorating effects from these conditions.

Medical records show in September 2022, Defendant began taking medication to control high cholesterol and high blood pressure. (Doc. No. 208, p. 25.) In November 2022, Defendant had a tooth extracted which shattered during extraction. (Doc. No. 208, p. 53.) In January 2023, he was prescribed a third medication for high blood pressure. (Doc. No. 208, p. 18.). During that same visit, Defendant refused an appointment with urology and a biopsy to diagnose his probable

7

prostate cancer which was indicated by elevated levels of prostate-specific antigens ("PSA") in his blood. (Id.) In February 2023 he was diagnosed with a severe degenerative joint disorder in the lumbar spine for which he was prescribed ibuprofen. (Doc. No. 208, p. 14.) During the same visit, his blood pressure was measured at 156/90 despite being on medication for high blood pressure. (Doc. No. 208, p. 12.) In March 2023, medical records indicate he suffered from a corneal scar and opacity of vision. (Doc. No. 208, p. 9.) During his final visit, in the record, in June 2023, Defendant exhibited a rash and continued back pain. (Doc. No. 208, p. 1.)

A report generated by the BOP indicates as of June 20, 2023, the following conditions were "current" for Defendant: hypertension, hyperlipidemia, corneal scarring and opacity, unspecified disorder of circulatory system, periapical abscess with sinus, periapical abscess without sinus, lumbar degenerative disc disease, lower back pain, disorder of the prostate, rash and skin eruption, abnormal blood chemistry, and the presence of cytoplasmic antinuclear antibody patterns. (Doc. No. 208, pp. 39–40.)

The Government argues that, despite Defendant's health concerns, BOP has provided appropriate treatment for Defendant's conditions, and he has not shown they establish a *serious* deterioration related to aging or they rise to the level of a "truly exceptional" case. (Doc. No. 207, p. 10.) This Court disagrees. Defendant was born on January 3, 1955, and is now sixty-nine years old. Defendant has demonstrated a trend in declining health from his medical visits in September 2022 through June 2023. Defendant has refused a biopsy of his prostate due to elevated PSA in his blood, (Doc. No. 208, p. 17), and this Court will not assume cancer without a medical diagnosis. However, the medical records indicate a decline in the health of teeth, eyes, back, musculoskeletal and circulatory systems which is consistent with the serious deterioration in physical health related to the aging process. Thus, the Court determines the record sufficiently demonstrates Defendant is

over sixty-five years old, has served over ten years of his sentence, and has a pattern of serious deterioration of health due to the aging process. Malone, 57 F.4th at 169 (finding the district court abused its discretion by failing to properly assess ailing health and advanced age which would warrant the defendant's compassionate release).

The United States in response points to United States v. Moore, where this Court denied compassionate release to a defendant who had prostate cancer, high blood pressure, being overweight, and mild arthritis of the back. See No. 3:17CR293, 2023 WL 1456291, at *3 (W.D.N.C. Feb. 1, 2023). The defendant in Moore was fifty-eight years old and applied for compassionate release because the risk COVID-19 could have on his health. Therefore, the advanced age portion of the policy statement did not apply to his motion. In that case, the court found the "[d]efendant presents the risk factors of prostate cancer, high blood pressure, and being overweight. However, these conditions do not constitute an extraordinary and compelling reason justifying release because Defendant has been fully vaccinated." Id. Thus, the Court relied on U.S. Sentencing Guidelines Manual § 1B1.13(b)(1), "Medical Circumstances of the Defendant." Here, the Court applies U.S. Sentencing Guidelines Manual § 1B1.13(b)(2) "Age of Defendant," which calls for a different analysis.

In United States v. Bailey, this Court denied compassionate release to a defendant who was seventy-two years old with high blood pressure, high cholesterol, and atrial fibrillation. See No. 1:11CR10, 2020 WL 3883659, at *2 (W.D.N.C. July 9, 2020). In Bailey, "the [d]efendant ha[d] failed to establish that these conditions are not well-controlled by his current medical treatment." However, the defendant in Bailey also did not qualify for analysis under U.S. Sent'g Guidelines Manual § 1B1.13(b)(2) because he had only served seven and a half years of his sentence, not the ten recommended by policy nor the fifteen years Defendant has served. As a result, Bailey also

9

applied the U.S. Sent'g Guidelines Manual § 1B1.13(b)(1) analysis. Additionally, while the defendant in Bailey, like Defendant, had hypertension and hyperlipidemia, here, Defendant also has degeneration of the spine, teeth, and eyes demonstrating a marked decline in general health. Furthermore, Defendant is on three medications to control high blood pressure, which was still elevated at his last visit, and has continued issues with chronic backpain.

In United States v. Saccoccia, the First Circuit denied compassionate release to a prisoner with elevated PSA levels finding "with only suggestive test results and in the absence of an actual diagnosis — [the defendant] could not meaningfully represent that he has prostate cancer. After all, an elevated PSA level is far removed from a definite indicator of prostate cancer." See 10 F.4th 1, at *6 (1st Cir. 2021). In this case, Defendant's elevated PSA taken with the hypertension, hyperlipidemia, periapical abscesses, degenerative disc disease, and abnormal blood chemistry demonstrates a trend of seriously deteriorating health related to the aging process.

### B. COVID-19

The U.S. Sentencing Guidelines provide guidance for when a public health emergency, like COVID-19, constitutes an extraordinary and compelling reason for compassionate release:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> (iii) such risk cannot be adequately mitigated in a timely manner.

§ 1B1.13(b)(1)(D). When considering whether a defendant's serious physical or medical condition warrants early release because of COVID-19, courts assess whether "an inmate shows both a

particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility." United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023).

Defendant is housed at F.C.I. Williamsburg, which currently reports zero active cases of COVID-19. See https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp, (last visited June 6, 2024). In May 2023, the federal government ended the national state of emergency related to COVID-19. National Emergencies Act, Pub. L. No. 118-3, 137 Stat. 6 (2023). For these reasons, Defendant's alleged susceptibility to COVID does not present an extraordinary and compelling reason to reduce his sentence. See Brown, 78 F.4th at 128 (recognizing while medical conditions might put a defendant at increased risk of a severe COVID-19 infection, extraordinary and compelling reasons do not exist where the risk was mitigated by vaccine status and a defendant's failure to show a particularized risk of contracting the disease at the facility where he is incarcerated). Because Defendant has not shown that either his facility is at imminent risk of being affected by an outbreak or such a risk cannot be mitigated in a timely manner, Defendant's susceptibility to COVID-19 is not an extraordinary and compelling reason for compassionate release.

### C. Unusually Long Sentence

Defendant argues the length of his sentence in and of itself presents an extraordinary and compelling reason to merit a reduction under the First Step Act. Defendant asserts he received an unusually long sentence based on a theory of sentencing which has subsequently been rejected by the courts. This argument is without merit.

The Fourth Circuit has recognized "gross" or "exceptionally dramatic" sentencing disparities between a sentence under the prior law and the current law *can* constitute "extraordinary and compelling reasons," to warrant a sentence reduction. McCoy, 981 F.3d at 274–75, 285, 288

11

("[T]he *enormous* disparity between [the original] sentence and the sentence a defendant would receive today *can* constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)."). There is no bright line rule or formulaic approach to determine what "disparity" between sentences must exist in order to be considered "extraordinary and compelling," and courts instead look to a defendant's individualized circumstances. See United States v. Johnson, No. 2:08-CR-00930-DCN-7, 2023 WL 24129, at *4 (D.S.C. Jan. 3, 2023) ("[D]istrict courts have determined that an inmate failed to present extraordinary and compelling reasons for compassionate release even though he would have been subjected to a lower advisory guideline range if sentenced today." (citing United States v. Hallman, 2022 WL 4477710, at *3 (W.D.N.C. Sept. 26, 2022) (holding even though the defendant would no longer be classified as a career offender, the sentencing disparity [between the original 360 months to life and the current range of 161 and 180 months] did not amount to an extraordinary and compelling reason because his criminal history "would likely have warranted an upward variance"))).

In support of this argument, Defendant points to the Supreme Court's decision in Kisor v. Wilkie holding courts should not defer to an agency's interpretation of its own rules "unless the regulation is genuinely ambiguous . . . after exhausting all the traditional tools of construction." 139 S. Ct. 2400, 2415 (2019). Then, Defendant cites United States v. Banks, where the Third Circuit—relying on Kisor—held the plain meaning of "loss" in Sentencing Guideline § 2B1.1 does not include "intended loss." 55 F.4th 246, 257–58 (3d Cir. 2022). For that reason, the Third Circuit concluded the language in Application Note 3(A) to § 2B1.1 authorizing a sentence based on "intended loss" contradicts the plain language of the Guideline itself and is invalid. Id. at 258. Defendant urges this Court to follow the Third Circuit's lead in Banks and limit the actual loss to the $22,159 in losses claimed for restitution. (Doc. No. 201-1, p. 37.)

12

Defendant fails to identify the correct actual loss amount.[2] Defendant argues his sentence was based on an intended loss amount totaling between $80 and $142 million. (Doc. No. 201-1, p. 34.) Defendant contends his sentence should have been based on "actual loss" which he claims totaled $22,159. Id. However, the transcript of Defendant's sentencing shows the twenty-two-level increase was due to an estimate of $20 million of *actual loss* to investors, as calculated in the PSR. (Doc. No. 162, p. 23; Doc. No. 132, p. 10.) This finding is consistent with the $27.6 million that the jury found constituted the proceeds of Defendant's criminal conduct. (Doc. No. 127.) Furthermore, as the Government argues, (Doc. No. 207, p. 11), the Fourth Circuit found "[t]he record amply supported the district court's conclusion that the fraud perpetrated by Hagen and his co-conspirators caused *at least* $20 million of the $27.6 million loss suffered by investors." Hagen, 468 F. App'x at 390 (emphasis added). Lastly, Defendant identifies no changes to the U.S. Sentencing Guidelines Manual which would materially affect the offense level of Defendant. Therefore, Defendant has not demonstrated the length of his sentence constitutes an extraordinary and compelling reason for a reduction.

### D. 18 U.S.C. § 3553(a)

Defendant argues the relevant § 3553(a) factors support a reduced sentence here because of the nonviolent nature of his crime, his advanced age, the amount of time he has served, his efforts towards rehabilitation, his proposed release plan, and his need for medical care. (Doc. No. 200-1, pp. 39–44.) The Government argues "the nature and circumstances of [Defendant's] offense, [Defendant's] history and characteristics, the need for deterrence, the need to protect the

---

[2] Even if Defendant had been sentenced based on intended loss, his argument would not prevail. In the Fourth Circuit, there is an intra-Circuit split concerning whether, in light of Kisor, the Sentencing Commission's Commentary to the Guidelines is binding even where the Guidelines themselves are unambiguous. Compare United States v. Campbell, 22 F. 4th 438, 444 (4th Cir. 2022), with United States v. Moses, 23 F. 4th 347, 356 (4th Cir. 2022). And the Fourth Circuit declined to follow the Third Circuit's decision in Banks in United States v. Limbaugh, upholding on direct appeal a defendant's sentence calculated based on "intended loss." Case No. 6:20-cr-00465-HMH-1, 2023 WL 119577, at *4 (4th Cir. Jan. 6, 2023).

13

public, and the need for just punishment and to promote respect for the law all weigh in favor of denying [Defendant] a reduction in his sentence." (Doc. No. 207, p. 13.)

Even though Defendant had shown extraordinary and compelling reasons supporting the relief he seeks, he still must demonstrate the § 3553(a) factors support a sentence reduction. According to the Fourth Circuit, "upon receiving such a motion for compassionate release, the court 'may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction.'" High, 997 F.3d at 185–86 (quoting 18 U.S.C. § 3582(c)(1)(A)(i) (2002)). "The § 3553(a) sentencing factors include the nature of the offense, the characteristics of the defendant, the Guidelines recommendation, and the need for deterrence, public safety, and rehabilitation." United States v. Hoover, 95 F.4th 763, 777 (4th Cir. 2024) (citing 18 U.S.C. § 3553(a)(1)–(7)).

Regarding the nature and circumstances of the offense, the Government argues Defendant "carefully planned the deception required to execute his scheme, including misrepresenting his involvement in GTX Global. He also took extraordinary steps to try and insulate himself from prosecution, including fleeing the country and trying to obtain diplomatic immunity. He used sophisticated means to transfer funds from the scheme internationally." (Doc. No. 207, p. 13.) The Government again offers Bailey as an analogous case. The court in Bailey found "the defendant engaged in a decade-long Ponzi scheme to defraud investors of millions of dollars. In so doing, the defendant wiped out many of his clients' life savings, leaving them destitute. Considering the circumstances, the [c]ourt concludes that a reduction of the [d]efendant's sentence to time served" would not satisfy the relevant § 3553(a) factors intended to provide just punishment, afford adequate deterrence, and protect the public. United States v. Bailey, No. 1:11-CR-00010-MR,

2020 WL 3883659, at *3 (W.D.N.C. July 9, 2020). The Government also relies on United States v. Dodt, which held the "[defendant] participated in a massive telemarketing sweepstakes fraud by which he and his co-conspirators deprived innocent victims, many of whom were elderly, out of millions of dollars. This [c]ourt accordingly sentenced him to a substantial term of 90 months. Defendant has served only 41 months (45%) of this sentence." No. 315CR213MOCDCS13, 2020 WL 6877182, at *2 (W.D.N.C. Nov. 23, 2020).

Here, regarding his offense, Defendant had served over 180 months toward his sentence as of June 2023. (Doc. No. 207-2, p. 3.) Defendant argues he has never shown violent or threatening behavior and his offense was white collar. (Doc. No. 201-1, p. 39.) Furthermore, Defendant claims to have accepted responsibility for the harms caused by his actions by having written letters of apology to his victims, participating in fourteen classes offered by BOP, and maintaining a flawless disciplinary record. (Id. at 41–42.) BOP assessed Defendant as having a minimal overall male pattern risk level. (Doc. No. 201-1, p. 59.) Furthermore, Bailey and Dodt are not squarely analogous to this case. In Bailey, the defendant's ponzi-scheme lasted a decade, while Defendant's offense occurred between October 28, 2005, and on or about June 14, 2006. (Doc. No. 132, p. 8.) Thus, Defendant's offense is different in type and duration to that of Bailey. In Dodt, the defendant had only served forty-one months. Here, Defendant has served over 180 months as of June 2023. (Doc. No. 201-1, p. 1.) Also, in regard to the length of time Defendant has served, while the Government argues only serving "34.9 percent of his full term" does not support a reduction in sentence as a 3553(a) factor, (Doc. No. 207, p. 13), the policy statement specifically applies to defendants who have served "at least 10 years or 75 percent of his or her term of imprisonment, *whichever is less*." U.S. Sent'g Guidelines Manual 1B1.13 (emphasis added).

Defendant argues he is unlikely to recidivate due to his advanced age, deteriorating health, and stable home upon release. According to the United States Sentencing Commission, older offenders (offenders over fifty years old at the time of sentencing) have a recidivism rate of 21.3%.[3] Furthermore, the Commission found recidivism rates are even lower for offenders released between the ages of sixty-five to sixty-nine.[4] Thus, because Defendant is sixty-nine years old, statistically, his recidivism rate is expected to be between 10.4% and 15.2%, and, because he has served over 120 months, Defendant is thirty percent less likely to recidivate.[5] Defendant's recidivism rate due to age is at odds with his recidivism rate due to criminal history category which could be as high as 66.8%.[6] However, the data used in the criminal history study was collected from inmates with a median age of thirty-seven, and so that particular study does not accurately model Defendant.[7] Defendant's statistical recidivism rate is more accurately modeled by the age-based rates of recidivism found in the Sentencing Commission's older offenders study. Lastly, the BOP's individualized needs plan for Defendant listed him as "minimum risk recidivism level" as of December 15, 2022. (Doc. No. 207-1, p. 2.)

Lastly, the Court must consider the need for the sentence imposed "to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner . . ." 18 U.S.C. § 3553(a)(2)(D). Here, Defendant has established a trend of deteriorating health with twelve medical ailments. The most effective manner in providing medical care to Defendant also

---

[3] Kristin Tennyson, Lindsey Jeralds, & Julie Zibulsky, *Older Offenders in the Federal System*, U.S. SENT'G COMM'N, 42–43 (2022).
[4] Id. at 55 (showing recidivism rates for offenders aged sixty-five to sixty-nine to be 15.2% and for offenders aged seventy and older to be 10.4%).
[5] Ryan Cotter, *Length of Incarceration and Recidivism*, U.S. SENT'G COMM'N, 30 (2020) (finding offenders incarcerated for more than 120 months were identified as having a statistically significant deterrent relationship between incarceration and recidivism exhibiting a 30-45% lower recidivism rate).
[6] Tracey Kyckelhahn & Trishia Cooper, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders*, U.S. SENT'G COMM'N, 7 (2017) (finding offenders in CHC III had rearrest rates of 59.4% for offenders with four criminal history points, increasing to 66.8% for offenders with six criminal history points.)
[7] Id. at 7.

16

supports a reduction in his sentence or a compassionate release. After serving 300 months of his 540-month sentence, Defendant will be squarely in his seventies ensuring the lowest studied recidivism rate. A 300-month sentence would therefore be a suitable reduction in sentence to balance Defendant's needs due to deteriorating health against the need to protect the public. Thus, on balance the 3553(a) factors support a reduction in his sentence to 300 months.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** Defendant's Motion for Compassionate Release, (Doc. No. 200), is **GRANTED IN PART** pursuant to 18 U.S.C. § 3553(a). Defendant's sentence is reduced to an aggregate term of 300 months imprisonment, with the original term of supervised release and terms and conditions thereof as previously imposed. (Doc. No. 147.)

**IT IS SO ORDERED.**

Signed: July 9, 2024

Frank D. Whitney
United States District Judge